**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

In re:

Caren S. Williamson　　　　　　　　　　　　**Case No. 2:18-bk-55613**

　　　　　　　　　　　　　　　　　　　　　　**JUDGE C. KATHRYN PRESTON**


Tanya Smith
268 Pleasant Lee Drive
Heath, Ohio 43056,

　　**Plaintiff,**

　　v.　　　　　　　　　　　　　　　　　　**Adv. Pro. Case No. _____**

　　　　　　　　　　　　　　　　　　　　　　**JUDGE _____**

Caren S. Williamson
3223 Lakebreeze Drive
Haines City, Florida 33844,

**and**

PHH Mortgage Corporation
One Mortgage Way, Mail Stop SV01
Mt. Laurel, New Jersey 08054-4637,

　　**Defendants.**

## COMPLAINT

**JURISDICTION & VENUE**

　　1.　　This Complaint is brought as an Adversary Proceeding by authority of Part VII of

the Federal Rules of Bankruptcy Procedure and pursuant to Rule 7001 (1), (2), and (6)

to recover from debtor-defendant, Caren S. Williamson ("Defendant"), money and real

1

property and to determine (a) the extent of the interest of plaintiff, Tanya Smith ("Plaintiff"), in real property titled to Defendant and (c) the dischargeability of Defendant's debt to Plaintiff all of which is authorized by 11 U.S.C. Section 523 (a) (2) (A) and (3) and (6).

2. Jurisdiction is proper pursuant to 28 U.S.C. Section 1334.

3. Venue is proper pursuant to 28 U.S.C. Section 1408.

4. Neither Plaintiff nor the alleged debt upon which she sues herein is listed or scheduled as required by 11 U.S.C Section 521 (a) (1).

5. Plaintiff, Tanya Smith ("Plaintiff") has not filed a Proof of Claim because the causes of action asserted herein arose after the petition for Chapter 13 relief had been filed on 09-05-2018.

6. As a result Plaintiff could not have filed the instant Complaint prior to the dates set by the Court to file a Proof of Claim and/or to object to discharge both of which were 09-07-2018.

7. Service of summons and a copy of the Complaint cannot be served upon Defendant in accordance with Rule 7004 (b) (9), which directs service upon a debtor at the address in the Petition for Relief, because, to Plaintiff's knowledge, Defendant has not provided the Court with her current residential address which is 3223 Lakebreeze Drive, Haines City, Florida 33844, which is now Plaintiff's current and permanent residential address.

**FACTS COMMON TO ALL COUNTS**

8. In June of 2020 Plaintiff, while in Licking County, Ohio, was contacted by telephone by Defendant, who was then also physically present in Licking County but

2

who now maintains permanent residence at 3223 Lakebreeze Drive, Haines City, Florida 33844, with the request that Plaintiff purchase a house owned by Defendant which is located at 268 Pleasant Lee Drive, Heath, Ohio 43056 (the "Property").

9. Plaintiff inspected the Property and found it to be in very poor condition, and Defendant agreed.

10. Plaintiff expressed that in order for the Property to be made safely habitable, it would require substantial and costly repairs and renovation.

11. Defendant agreed with Plaintiff and admitted to her that the reason that repairs and renovation had not been done was because Defendant and her boyfriend, Scott Trott, who also resided there with others of Defendant's family, could not afford to make them.

12. In the summer of 2020 Plaintiff, while in Licking County, verbally agreed to purchase the Property from Defendant at a price which would be substantially less than fair market value.

13. In the summer of 2020, Defendant, while in Licking County, verbally agreed to sell the Property to Plaintiff at a price which would be substantially less than fair market value.

14. An oral contract between Plaintiff and Defendant to purchase and sell the Property was formed (the "Oral Contract").

15. Plaintiff's extensive acts of part performance, the detail of which is set forth below, provide ample and adequate evidence of the existence of the Oral Contract which permits its enforcement by the Court, and as a result, Ohio's Statute of Frauds, Section

3

1335.05, Ohio Revised Code, does not preclude its enforcement.

16. In the summer of 2020 Defendant had expressly represented to Plaintiff that immediately prior to the formation of the Oral Contract, Defendant had received a prior offer from a male party to purchase the Property for $50,000 which offer, if accepted by Defendant's lender, defendant, PHH Mortgage Corporation ("PHH"), would have resulted in a "short sale" because the outstanding mortgage loan balance then due PHH exceeded the $50,000 offer.

17. In the summer of 2020 Defendant also expressly represented to Plaintiff that PHH had indicated to Defendant that it would cooperate in a "short sale" at a figure just above the $50,000 offer.

18. In order to induce Plaintiff to enter into a transaction for the purchase and sale of the Property, in the Summer of 2020 Defendant expressly promised Plaintiff and represented to her that Defendant would submit to PHH (a) Plaintiff's "short sale" offer and (b) Defendant's application for a loan modification the latter of which, according to the oral representation of Defendant, would assist PHH in approving a "short sale".

19. In August of 2020 the parties arrived at an agreed sale price of $75,000, and Plaintiff's realtor prepared and submitted to Defendant's attorney a standard Columbus Bar Association real estate purchase contract which was signed by Plaintiff whereby Plaintiff offered to purchase the Property from Defendant at the price of $75,000. A copy of the real estate purchase contract offer is not attached as it was computer-generated and not retained by the realtor, and Plaintiff does not have a hard copy.

20. In order further to induce Plaintiff to enter into a purchase and sale transaction,

Defendant agreed to rent the Property to Plaintiff to be used as her residence, and they entered into a written agreement which was drafted by Plaintiff and dated August 12, 2020, entitled Standard Lease Agreement (the "Rental Agreement"). A copy is attached hereto.

21. The sole purpose of the parties' entering into the Rental Agreement was to memorialize the legal relationship between Defendant and Plaintiff until they could close the purchase and sale transaction with the approval of PHH.

22. The Agreement provides for, *inter alia*, Plaintiff's occupation of the Property as her permanent residence and her payment to Defendant of a monthly rental amount.

23. Other than those two terms, it was understood and orally agreed by the parties that the other terms of the Rental Agreement, which is a boilerplate document, had no application to their arrangement.

24. Specifically, the portion of the section found on page 2 of the Rental Agreement entitled POSSESSION, where Plaintiff certifies that she "accepted the Premises in good order", was not a term of the Oral Contract because, on the contrary, a primary purpose of the Oral Contract was to have Plaintiff take occupancy and pay for repairs and renovation to the Property in exchange for its eventual ownership since Defendant could not afford to complete any repairs and renovation.

25. Likewise, the parties did not intend for the application to the Oral Contract of the language contained in the section on page 3 entitled Maintenance, Repairs, or Alterations since it purports to prohibit Plaintiff from performing, at her cost, the repairs and renovation to the Property which, again, is a primary purpose of the Oral Contract.

26. The handwritten language at the bottom of the last page of the Rental Agreement supports the allegations in the two immediately preceding paragraphs wherein the parties specifically identify areas to be addressed and/or repaired by Plaintiff.

27. Plaintiff justifiably relied to her extreme detriment upon Defendant's express promises and representations including but not limited to Defendant's assertions that she would submit to PHH (a) Plaintiff's "short sale" offer and (b) Defendant's application for a loan modification, Plaintiff entered into the Rental Agreement.

28. Plaintiff further justifiably relied to her extreme detriment upon Defendant's express promises and representations by taking occupancy of the Property on August 12, 2020, and beginning to expend the time, effort, and funds in making repairs and performing renovation the details of which are set forth below.

29. Since August 12, 2020, the Property has been and is now the permanent residence of Plaintiff.

30. The address appearing beneath Plaintiff's name in the above case caption supports the previous allegation.

31. Since Plaintiff took occupancy on August 12, 2020, she has used her own and the physical efforts of others in cleaning and clearing the Property, and Plaintiff has expended substantial amounts of money, in excess of $25,000, in making repairs, performing renovation, and making improvements to the Property some of which were necessary to eliminate unsafe conditions and to bring the Property into compliance with local building codes, and the Property needs further and expensive repairs.

32. Plaintiff's repairs, renovation, improvements, either completed or in process,

include but are not limited to the following:

    a.    three separate treatments for bed bug infestation;
    b.    mold in the basement which is not yet fully remediated;
    c.    black mold in two bathrooms which required them both to be stripped down to the studding;
    d.    an unsafe and dilapidated pool in the back yard which allowed mosquitos to breed;
    e.    repair of the front steps which have caused persons to fall and be injured;
    f.    repair of a garage that is in such disrepair that it was in danger of coming down;
    g.    piles of trash and debris which needed to be taken away;
    h.    the erosion to a drainage line which caused the driveway to wash away in parts leaving a large ripple effect on the surface and upon which vehicles must drive;
    i.    the replacement of a severely damaged front door;
    j.    the replacement of a side French door that was rotted and warped;
    k.    the well needs to be re-lined;
    l.    the furnace needs to be replaced; and
    m.    the gutters and downspouts need to be replaced.

33. Plaintiff has discovered that she will also have to address citations which have been issued by the Licking County Health Department regarding the Property.

34. After Plaintiff had taken occupancy of the Property and expended the time, effort, and funds referred to above, she was informed through Defendant's attorney that PHH had allegedly rejected Plaintiff's purchase offer of $75,000.

35. As a result, Plaintiff ceased making the rental payments due under the Agreement, but she has placed in escrow each month the rental amount due.

36. Thereafter, in late 2020 or early 2021, and on the cue from Defendant, and allegedly from PHH as claimed by Defendant, Plaintiff submitted to Defendant another offer, in writing, with an increased purchase price of $90,000 which was purported to satisfy PHH's requirements. A copy of the real estate purchase contract offer is not attached as

it was computer-generated and not retained by the realtor, and Plaintiff does not have a hard copy.

37. Defendant informed plaintiff that PHH had allegedly rejected the $90,000 offer to purchase the Property.

38. Again, on cue from Defendant who claimed that PHH again wanted more money before it would approve a "short sale", Plaintiff submitted to Defendant on March 22, 2021, a third offer, in writing (the "Offer"), with an increased purchase price of $142,800 which is virtually the outstanding balance due on Defendant's mortgage loan. A copy of the real estate purchase contract offer is attached hereto.

39. On or about March 31, 2021, Defendant, through her attorney, rejected Plaintiff's Offer without reference to PHH's position and indicated that Defendant no longer wanted to sell her home even if the missed (and escrowed) rental payments were made.

40. Defendant never submitted to PHH Plaintiff's Offer or, if it was submitted, PHH rejected it.

41. Defendant may have never submitted to PHH any of Plaintiff's other two purchase offers.

42. Plaintiff has learned from Defendant that contrary to Defendant's earlier express and multiple representations, she has never submitted to PHH an application for the loan modification, and Defendant communicated to Plaintiff as the reason for its not being submitted to PHH the alleged negligence of the office personnel of her attorney.

43. PHH is joined as a defendant because it has an interest in the Property and in Plaintiff's three (3) offers to purchase it.

**COUNT I**

**MISPRESENTATION AND CIVIL FRAUD:
SPECIFIC PERFORMANCE OF THE ORAL CONTRACT & DAMAGES**

44. Plaintiff incorporates the statements and allegations contained in paragraphs 1-43.

45. Defendant knowingly, intentionally, and maliciously made the promises and representations referred to above, at or near the dates and times set forth above, for the sole purpose of inducing Plaintiff into relying upon them and acting on them so as to economically benefit Defendant.

46. Plaintiff justifiably relied upon Defendant's promises and representations to her extreme economic and emotional detriment.

47. Plaintiff's extensive efforts and expenditure of significant funds to repair, renovate, and improve the Property constitute part performance of the Oral Contract which is sufficient to prove the Oral Contract and to remove it from the operation of Ohio's Statute of Frauds, Section 1335.05, Ohio Revised Code.

48. Plaintiff's performance consists of unequivocal acts by her in total and justifiable reliance upon the Oral Contract.

49. Plaintiff's performance is exclusively referable to the existence of the Oral Contract and cannot reasonably be accounted for in any other manner.

50. Plaintiff has changed her position to her extreme economic and emotional detriment thereby rendering it impossible or impractical to place the parties in in the *status quo ante* due to the uniqueness of the Property which supports the requested relief in the form of specific performance of the Oral Contract.

51. As a direct, proximate and legal result, Defendant is liable to Plaintiff for specific performance of the Oral Contract to sell the Property to Plaintiff.

52. As a further direct, proximate, and legal result, Defendant is liable to Plaintiff for compensatory damages, punitive damages, and reasonable attorney's fees.

## COUNT II

**BREACH OF ORAL CONTRACT:
SPECIFIC PERFORMANCE OF THE ORAL CONTRACT & DAMAGES**

53. Plaintiff incorporates the statements and allegations contained in paragraphs 1-52.

54. Plaintiff has performed all of the terms, conditions, and her obligations pursuant to the Oral Contract.

55. Defendant has breached all of the terms, conditions, and her obligations pursuant to the Oral Contract.

56. As a direct, proximate and legal result, Defendant is liable to Plaintiff for specific performance of the terms of the Oral Contract, for compensatory damages not cured by Defendant's specific performance, and for her other losses.

## COUNT III

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

57. Plaintiff incorporates the statements and allegations contained in paragraphs 1-56.

58. Defendant's false and malicious promises and misrepresentations led Plaintiff to (a) enter into the Oral Contract; (b) take occupancy of the Property, and (c) expend time, effort, and funds in making repairs and performing renovation.

59. Defendant's conduct is extreme and outrageous so as to go beyond all possible

bounds of decency and decorum in the conduct of legal affairs and business transactions, and they are utterly intolerable in an organized society and in a civilized community.

60. Defendant's conduct has resulted in harm to Plaintiff whose behavior has been affected negatively in her business dealings with customers and interpersonally; she is in a state of constant irritation and distraction; her confidence in making decisions has been eroded; she experiences anxiety which results in the feeling of knots in her stomach and the thought that she will be rendered homeless; and she fears for her economic future.

61. Defendant's conduct is so seriously deceptive and duplicitous and is of such a nature that no reasonable person should be expected to tolerate or have to endure it

62. As a result, Plaintiff has experienced severe emotional distress.

63. As a direct, proximate and legal result, Defendant is liable to Plaintiff for compensatory damages, punitive damages, and reasonable attorney's fees.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff, Tanya Smith, demands judgment against Defendant, Caren S. Williamson, for specific performance of the Oral Contract, for compensatory damages not cured by specific performance, and for her other losses in amounts which will be shown at trial; for compensatory and punitive damages for her severe emotional distress; for an award of reasonable attorney's fees; for interest on any judgment at the maximum rate allowable by law; and for the

costs of the action.

                                                                   /s/Charley Hess  
                                          Charley Hess (Ohio S. C. Reg. No. 0023350)  
                                          4230 Tuller Road, Suite 100  
                                          Dublin, Ohio 43017  
                                          (614) 442-5800  
                                          (614) 442-5802 fax  
                                          charley@charleyhess.com  
                                          Trial Attorney for Plaintiff, Tanya Smith

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing has been served electronically or by First Class U. S. Mail this ***24th*** day of ***May***, 2021, upon the following:

Edward A. Bailey
Chapter 13 Trustee
130 East Wilson Bridge Road, Suite 200
Worthington, Ohio 43085-2391

Office of the U. S. Trustee, Columbus
170 North High Street, Suite 200
Columbus, Ohio 43215-2417

Rebecca K. Hockenberry
THOMPSON & HOCKENBERRY
Attorneys for Debtor-Defendant
371 Lexington Avenue
Mansfield, Ohio 44907
**rebecca@attyth.com**

      /s/Charley Hess
Charley Hess (Ohio S. C. Reg. No. 0023350)